[No. D055396. Fourth Dist., Div. One. Jan. 11, 2010.]

DENISHA LAWSON et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CENTER POINT, INC., et al., Real Parties in Interest.

1374

1376

COUNSEL

William J. Brown III; and John T. Richards for Petitioners.

Carol Strickman for Legal Services for Prisoners with Children as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Brack & Mason, Lindsay R. Brack and Susan L. Mason for Real Parties in Interest Center Point, Inc., Jill Michon and Jackie Galston.

Cihigoyenetche, Grossberg & Clouse, Richard R. Clouse and Anthony C. Ferguson for Real Parties in Interest State of California and Mark Koen.

OPINION

IRION, J.—Denisha Lawson was incarcerated in a community-based correctional facility operated by Center Point, Inc. (Center Point), where she resided with her infant daughter, Esperanza. Lawson and Esperanza, by and though her guardian ad litem, filed a lawsuit against the State of California (the State),[1] Center Point, and employees of the State and Center Point, alleging that Esperanza sustained physical injury and Lawson experienced emotional

---

[1] The operative complaint also names California's Department of Corrections and Rehabilitation (the CDCR) as a separate defendant. However, because the CDCR is an agency of the State, we do not discuss it as a distinct defendant.

distress when defendants failed to obtain medical treatment for Esperanza's serious respiratory infection. Citing the governmental immunity set forth in the Tort Claims Act (Gov. Code, § 810 et seq.), the trial court sustained demurrers to several of the causes of action asserted by Esperanza and Lawson.

Lawson and Esperanza filed a petition for writ of mandate asking us to review the trial court's ruling on the demurrers, and we issued an order to show cause.

As we will explain, the trial court erred in sustaining (1) the State's demurrer to Esperanza's cause of action for negligence; and (2) the demurrer brought by Center Point and its employees as to (a) Lawson's causes of action for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, and (b) Esperanza's cause of action for negligence.

I

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Pregnant and Parenting Women's Alternative Sentencing Program Act*

Under the Pregnant and Parenting Women's Alternative Sentencing Program Act (PPWASPA) (Pen. Code, § 1174 et seq.), the CDCR provides community-based facilities for women prisoners with young children, as an alternative to commitment to state prison. At the time of sentencing, a court may recommend a woman for placement in the program if she is pregnant or the mother of one or more children under the age of six, has a history of substance abuse, has not been convicted of certain specified crimes, and has been sentenced to prison for a term of not more than 36 months. (Pen. Code, § 1174.4, subds. (a), (b).) Women sentenced to the program receive treatment for substance abuse while living with one or more of their children under the age of six in a 12-month residential program, followed by 12 months of outpatient transitional services. (*Id.*, § 1174.2.) According to the PPWASPA, the CDCR contracts with a service provider to "administer and operate the center and program" consistent with statutory and regulatory requirements.[2] (Pen. Code, § 1174.3, subd. (b).)

---

[2] Apart from the program created by the PPWASPA, a similar program for women inmates with young children is created by Penal Code section 3410 et seq. The amicus curiae brief filed by Legal Services for Prisoners with Children explains that the program established under Penal Code section 3410 et seq. is referred to as the Community Prisoner Mother Program, whereas the program created under the PPWASPA is called the Family Foundations Program. Under the Community Prisoner Mother Program, "[a]n incarcerated mother is eligible . . . if she has a

B. *The Allegations of the Second Amended Complaint*

As alleged in the operative second amended complaint (the Complaint), in November 2006 Lawson was placed into a 40-bed correctional facility existing under the PPWASPA run by Center Point in San Diego (the facility). According to Lawson's briefing, she was pregnant at the time of her placement in the facility, and gave birth prematurely to Esperanza in March 2007.

The Complaint alleges that on April 25, 2007, Esperanza developed severe respiratory problems, later diagnosed as double pneumonia. Over the course of eight to 11 days, Lawson allegedly asked personnel at the facility to obtain treatment for Esperanza. The request was repeatedly denied, despite Esperanza's "green discharge . . . , labored breathing, and increasingly more ashen complexion" and the fact that Esperanza had ceased breathing on at least three occasions. According to the Complaint, one of the employees at the facility ultimately defied her supervisors and took Esperanza to the hospital. Because of the delay in obtaining medical care, Esperanza allegedly suffered "hypoxia, double pneumonia requiring double intubation, cardiac arrest, scarring and injury to both lungs, causing permanent injury which will cause future medical problems." Lawson also alleged that she was deprived of her own medications and the use of a breast pump while at the facility.

Lawson and Esperanza, by and through her guardian ad litem, filed this action based on the physical injuries to Esperanza and the emotional trauma suffered by Lawson when she was denied necessary medical care for her infant.

The following defendants are sued in the Complaint: (1) the State; (2) two employees of the State, specifically Mark Koen and Herbert Sanders; (3) Center Point, which, according to the Complaint "owned and/or leased and operated" the facility by "express contract" with the State; and (4) four employees of Center Point, specifically Sushma Taylor, Laura Lambe, Jill Michon and Jackie Galston. According to the Complaint, the Center Point employees were "working under the color and authority of the State of California as jailers."

The Complaint contains six causes of action: (1) "Failure to Furnish Medical Care to Prisoner" in violation of Government Code section 845.6

---

probable release or parole date with a maximum period of confinement not exceeding six years; she was the primary caretaker of the infant prior to incarceration; she has not been found to be an unfit parent; and she does not pose an unreasonable risk to the public due to the nature of her crime, the risk of absconding, or probable adverse conduct." (*Woods v. Horton* (2008) 167 Cal.App.4th 658, 666 [84 Cal.Rptr.3d 332], citing Pen. Code, § 3417.)

(first cause of action); (2) negligence (second cause of action); (3) negligent infliction of emotional distress (third cause of action); (4) intentional infliction of emotional distress (fourth cause of action); (5) false imprisonment, asserted by Esperanza; and (6) violation of 42 United States Code section 1983 against all of the defendants except the State.

## C. The Trial Court's Rulings on the Demurrers to the Complaint

This writ proceeding arises from the trial court's rulings on demurrers challenging the Complaint, which were filed by (1) the State and Koen; and (2) Center Point, Michon and Galston.[3]

### 1. The Trial Court's Ruling on the Demurrer Filed by the State and Koen

In the demurrer filed by the State and Koen, the State demurred to each of the causes of action alleged against it, but Koen demurred only to the first cause of action, i.e., the claim for "Failure to Furnish Medical Care to Prisoner" in violation of Government Code section 845.6.

On May 1, 2009, the trial court sustained the demurrer as to all of the causes of action except for false imprisonment. In sustaining the State's demurrer to the first through fourth causes of action, the trial court explained that under the immunity provided by the Tort Claims Act, "all government tort liability is dependent on the existence of an authorizing statute or 'enactment,' " and that the Complaint did not identify a statute imposing a duty on the State to provide Esperanza with medical treatment. The trial court also stated that although the Complaint relied on Government Code section 845.6, which provides that a public entity or a public employee (acting within the scope of his employment) is liable for failing to take action in response to a "prisoner . . . in need of immediate medical care," Esperanza was not a "prisoner" within the meaning of that statute. Further, the trial court concluded that other statutes identified in the Complaint did not give rise to a duty to provide medical care to Esperanza.[4] As to Koen's demurrer, the trial

---

[3] It appears that the remaining defendants (i.e., Taylor, Lambe and Sanders) did not file demurrers because they had not been served with the Complaint.

[4] Prior to challenging the Complaint, defendants (i.e., those named and served up to that point) filed demurrers to the two previous version of the pleadings. The trial court sustained, without leave to amend, the State's demurrer to Lawson's causes of action for failure to furnish medical care to prisoner, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress in the original complaint because Government Code section 844.6, subdivision (a) states that "a public entity is not liable for: [¶] . . . [¶] (2) An injury to any prisoner," and Lawson was unquestionably a prisoner.

court stated: "Because Defendant State of California is immune from liability under Government Code [section] 815, so is individual Defendant Koen."[5]

### 2. The Trial Court's Ruling on the Demurrer Filed by Center Point, Michon and Galston

The demurrer filed by Center Point, Michon and Galston challenged each of the causes of action in the Complaint, except the cause of action for false imprisonment.[6]

On May 1, 2009, the trial court sustained the demurrer as to all of the causes of action at issue except for the cause of action for violation of 42 United States Code section 1983.[7] In its ruling, the trial court employed the following reasoning. First, relying on *Miller v. Filter* (2007) 150 Cal.App.4th 652 [58 Cal.Rptr.3d 671] (*Miller*), the trial court concluded that "[b]ased on the allegations of the complaint, Defendants Michon and Galston are uncompensated public officers. As such Michon and Galston are entitled to governmental immunity." The trial court then went on to employ much of the same reasoning it had used in deciding the State and Koen's demurrer.

Specifically, the trial court concluded that Michon and Galston were immune from liability to Lawson for the causes of action of "Failure to Furnish Medical Care to Prisoner," negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress because of Government Code section 844.6, subdivision (a), which states that "a public entity is not liable for: [¶] . . . [¶] (2) An injury to any prisoner." As to Lawson's claims against Center Point, the trial court stated that "[g]iven the immunity afforded to [Michon and Galston], Center Point cannot be vicariously liable for their actions."[8] With respect to Esperanza's causes of action

---

[5] Government Code section 815 sets forth the general rule of immunity for public entities under the Tort Claims Act, including that "[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

[6] In its earlier ruling on Center Point, Galston and Michon's challenge to the first amended complaint, the trial court overruled the demurrer to the false imprisonment cause of action.

[7] We note that the trial court's ruling with respect to the cause of action for violation of 42 United States Code section 1983 is unclear with respect to Center Point. Although, under the heading "42 U.S.C. § 1983," the ruling states that "Defendants' demurrer is overruled," it also states in the same paragraph that "Defendant Center Point is not subject to liability under 42 U.S.C. § 1983." However, we need not resolve this ambiguity, as the trial court's ruling on the cause of action for violation of 42 United States Code section 1983 is not at issue in this writ proceeding.

[8] The trial court also ruled that because Lawson did not plead facts showing that she was in immediate need of medical care, her allegation that personnel at the facility refused to provide medication and a breast pump to her did not trigger the duty under Government Code section 845.6 to take action in response to a "prisoner . . . in need of immediate medical care." The

for "Failure to Furnish Medical Care to Prisoner," negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, the trial court sustained Center Point, Michon and Galston's demurrer to those causes of action on the ground that "in California all government tort liability is dependent on the existence of an authorizing statute or 'enactment,' " and the Complaint did not identify a statute imposing a duty on Center Point, Michon and Galston to provide medical care to Esperanza.

### D. *Lawson and Esperanza's Petition for a Peremptory Writ of Mandate*

Lawson and Esperanza filed a petition for a peremptory writ of mandate on June 26, 2009 (the Petition). After receiving and considering a response to the Petition, we issued an order to show cause on August 25, 2009.

The Petition requests that we "issue a decision reversing the grant of demurrer as to the State of California on the First (Failure to Furnish Medical Care to Prisoner)[,] Second (Negligence)[,] Third (Negligent Infliction of Emotional Distress)[,] and Fourth (Intentional Infliction of Emotional Distress) Causes of Action[;] as to Mark Koen on the First, Second, Third, and Fourth Causes of Action[;] and as to Center Point, Inc., Sushma Taylor, Laura Lambe, Jackie Galston and Jill Michon on the First, Second, Third and Fourth Causes of Action."

Based on our understanding of the procedural history, the Petition incorrectly describes the extent of the rulings on the demurrers. First, as we have described, Koen demurred only to the first cause of action (i.e., "Failure to Furnish Medical Care to Prisoner"). The trial court's ruling on the demurrer with respect to Koen does not expressly state that it extends to other causes of action. Second, the trial court did not enter an order sustaining a demurrer as to Taylor and Lambe because, as far as the record before us indicates, those parties did not file a demurrer to the Complaint. Accordingly, we review the demurrers to the first, second, third and fourth causes of action with respect to the State, Center Point, Galston and Michon; and we review the demurrer to the first cause of action with respect to Koen.

With these clarifications in mind, we proceed to consider the trial court's ruling on the demurrers.

---

trial court stated that it was granting "10 days['] leave to amend to plead facts establishing Defendants denied [Lawson] immediate medical care."

II

DISCUSSION

A. *The Demurrer Filed by the State and Koen*

The demurrer filed by the State and Koen focused on concepts of governmental immunity as set forth in the Tort Claims Act, and the trial court relied on that immunity in sustaining the demurrers. Accordingly, we begin our analysis with an overview of the governmental immunity, and its exceptions, set forth in the Tort Claims Act.

1. *Public Agencies' and Public Employees' Immunity and Liability Under the Tort Claims Act*

The basic rule of immunity for public entities in California is contained in Government Code section 815, which states that "[e]xcept as otherwise provided by statute: [¶] (a) A public entity *is not* liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (*Ibid.*, italics added.) Conversely, "[e]xcept as otherwise provided by statute . . . , a public employee *is* liable for injury caused by his act or omission to the same extent as a private person." (*Id.*, § 820, subd. (a), italics added.) Thus, the Tort Claims Act "establishes the basic rules that public *entities* are immune from liability except as provided by statute ([Gov. Code,] § 815, subd. (a)) [and] that public *employees* are liable for their torts except as otherwise provided by statute." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 [42 Cal.Rptr.2d 842, 897 P.2d 1320].)

As relevant here, the Tort Claims Act sets forth two main statutory exceptions to the immunity from liability that it confers on public entities.

■ First, Government Code section 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative" (*id.*, subd. (a)), except "where the employee is immune from liability" (*id.*, subd. (b)). This "[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

■ Second, Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is

designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (*Ibid.*) This provision "imposes liability on a public entity if it breaches a mandatory statutory duty that is intended to protect against the kind of injury the party seeking relief has suffered, and the breach proximately caused that injury." (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 629 [76 Cal.Rptr.2d 489, 957 P.2d 1323].)

Here, the State is unquestionably a public entity within the meaning of the Tort Claims Act[9] and thus is subject to the immunity provisions for public entities set forth in the Tort Claims Act, including the two main exceptions to public entity immunity, i.e., (a) vicarious liability for the acts or omissions of a State employee (Gov. Code, § 815.2); and (b) breach of a mandatory statutory duty (*id.*, § 815.6).

■ Because this case concerns events in a correctional facility, we also must consider the provisions in the Tort Claims Act expressly applicable to injuries incurred by prisoners. Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does *not* apply in the case of injuries to prisoners. Government Code section 844.6, subdivision (a), states that with certain statutory exceptions (including Gov. Code, § 845.6, discussed below), "a public entity is not liable for: [¶] . . . [¶] (2) An injury to any prisoner." This creation of immunity expressly applies only to public entities, not public employees, as the statute states that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." (Gov. Code, § 844.6, subd. (d).)

In addition, Government Code section 845.6, focuses more specifically on the extent of immunity applicable to a prisoner's claim for failure to provide medical care. It limits the liability of public employees for failing to provide medical care, and also creates one exception to the State's blanket immunity for injuries to prisoners. "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; *but*, except as otherwise provided by Sections 855.8 and 856,[10] a public employee, and the public entity where the employee is acting within the scope of his employment, is liable *if the employee knows or has reason to know that the prisoner is in*

---

[9] Under Government Code section 811.2, the definition of " '[p]ublic entity' " includes "the State" and "any other political subdivision . . . in the State."

[10] Government Code sections 855.8 and 856 deal with injury relating to mental illness or addiction, which is not at issue in this case.

*need of immediate medical care and he fails to take reasonable action to summon such medical care. . . ."* (Gov. Code, § 845.6, italics added.) ██ Thus, under Government Code section 845.6, both a public entity and its employees are immune from claims based on injuries to prisoners caused by a failure to provide medical care, except when an employee, acting within the scope of his employment, fails to provide medical care to a prisoner and has reason to know that need for medical care is immediate.[11] Of course, if the injury is not incurred by someone who meets the statutory definition of a "prisoner," the normal rules of immunity and liability under the Tort Claims Act apply, under which (1) public employees are generally liable for their acts and omissions, and (2) public entities may be vicariously liable for the acts of their employees and have direct liability when breaching a mandatory statutory duty.

The Tort Claims Act defines the term "prisoner" for purposes of the expanded governmental immunities set forth in Government Code sections 844.6 and 845.6. As defined, " 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility. For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes." (Gov. Code, § 844.)

2. *Lawson Was a Prisoner, and Thus the State and Koen Are Entitled to the Immunity Set Forth in Government Code Sections 844.6 and 845.6 with Respect to Injuries Incurred by Lawson*

We first consider the impact of these rules on the causes of action brought by Lawson against the State and Koen.

There is no dispute that during the events described in the Complaint, Lawson was a prisoner. Thus, Government Code section 844.6 applies. Under that provision, the State is not liable for any injury to Lawson unless she pleads facts showing that an employee of the State acting within the scope of his employment failed to take action when she was "in need of immediate

---

[11] Case law has interpreted Government Code section 845.6 not only as a description of the limits of governmental immunity, but also as *"creat[ing]* liability, under certain circumstances, which does not otherwise exist under the common law. 'It has to do with something which exists neither privately nor publicly, an obligation of help. Under certain conditions, that is, actual or constructive knowledge of a need for immediate medical care, a duty of "reasonable action to summon" medical care is created.' " (*Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 317 [191 Cal.Rptr. 704], quoting *Hart v. County of Orange* (1967) 254 Cal.App.2d 302, 306 [62 Cal.Rptr. 73].) Apparently relying on this authority, the Complaint cites Government Code section 845.6 as the basis for the first cause of action, i.e., "Failure to Furnish Medical Care to Prisoner."

medical care" within the meaning of Government Code section 845.6. Further, because Lawson is a prisoner, Koen is not liable to Lawson for failure to obtain medical care for her, unless that same standard is met. (*Ibid.*)

█ Lawson attempts to bring her claim within Government Code section 845.6 by alleging that she was deprived of medication and a breast pump. However, "[l]iability under [Government Code] section 845.6 is limited to serious and obvious medical conditions requiring immediate care." (*Watson v. State of California* (1993) 21 Cal.App.4th 836, 841 [26 Cal.Rptr.2d 262].) We conclude, as did the trial court, that the denial of medications and a breast pump, as described in the Complaint, does not amount to neglect of a serious and obvious medical condition, and thus the allegations of the Complaint do not trigger the liability described in Government Code section 845.6.

Accordingly, the trial court properly sustained the demurrer as to (1) Lawson's causes of action for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against the State; and (2) Lawson's cause of action for "Failure to Furnish Medical Care to Prisoner" against the State and Koen.[12]

 3. *Esperanza Was Not a Prisoner, and Thus the State and Koen Are Not Entitled to the Immunity Set Forth in Government Code Sections 844.6 and 845.6 with Respect to the Injuries Incurred by Esperanza*

The next issue is whether Esperanza was a prisoner within the meaning of the relevant provisions of the Tort Claims Act while residing in the facility, thus triggering the provisions of Government Code sections 844.6 and 845.6. As we will explain, we conclude that Esperanza was not a prisoner as that term is defined in Government Code section 844.[13]

We begin with the text of Government Code section 844. The first sentence of that provision states that the term " 'prisoner' includes an inmate" of a

---

[12] As we have explained, the trial court sustained the demurrer of Lawson's causes of action against the State and Koen with 10 days' leave to amend. The record does not indicate whether Lawson filed an amended pleading in response to that ruling. Nothing in our opinion should be read as indicating that the trial court erred in granting leave to amend.

[13] In deciding that Esperanza was not a prisoner within the meaning of Government Code section 844, the trial court relied on a statement appearing in the false imprisonment cause of action in the original and first amended complaints that Esperanza "was a free citizen of California and the United States, who was not a prisoner or otherwise the subject of penal constraint." We do not view this statement as dispositive of the issue. The statement appears only in the false imprisonment cause of action, and is not incorporated by reference into the causes of action for negligence, negligent infliction of emotional distress or intentional infliction of emotional distress—which are at issue here. A plaintiff may plead inconsistent facts and legal theories in alternative counts. (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 29 [223 Cal.Rptr. 806] ["Where the exact nature of the facts is in doubt, or where the exact legal

correctional facility. The second sentence states that, as a matter of law, a person becomes a prisoner, upon "initial entry into a . . . correctional facility, pursuant to penal processes" "for the purpose of being booked" after being "lawfully arrested." (Gov. Code, § 844.) It is not clear whether the statutory definition is intended to be exhaustive of all circumstances in which a person may be prisoner. (Cf. *Larson v. City of Oakland* (1971) 17 Cal.App.3d 91, 97 [94 Cal.Rptr. 466] [in the definition of "prisoner" in Gov. Code, § 844, "that which is not included is *excluded*"]; *Datil v. City of Los Angeles* (1968) 263 Cal.App.2d 655, 658 [69 Cal.Rptr. 788] [in Gov. Code, § 844, "the word 'includes' . . . is a word of enlargement and not of limitation"]; see also *Patricia J. v. Rio Linda Union Sch. Dist.* (1976) 61 Cal.App.3d 278, 283 [132 Cal.Rptr. 211] (*Patricia J.*) [noting the conflicting views in *Larson* and *Datil*].)

If the definition in Government Code section 844 is not meant to be exhaustive, then the commonly understood meaning of the term "prisoner" is also relevant to our analysis. " 'The term "prisoner" is commonly used in law to designate a person in legal custody charged with some crime or public offense . . . .' " (*Patricia J., supra*, 61 Cal.App.3d at p. 283, quoting *People v. Mackie* (1929) 100 Cal.App. 292, 293 [279 P. 821].) Black's Law Dictionary defines "prisoner" as follows: "1. A person who is serving time in prison. 2. A person who has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison." (Black's Law Dict. (9th ed. 2009) p. 1314, col. 2.) Webster's Third New International Dictionary (2002) defines a "prisoner" as "a person held under restraint." (*Id.* at p. 1804.)

 Case law indicates that, for the purposes of governmental immunity, mere presence in a correctional facility—whether voluntarily or involuntary—is not sufficient to confer the status of "prisoner" on the person injured. (See *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 717 [117 Cal.Rptr. 241, 527 P.2d 865] (*Sullivan*) [a person who was improperly confined in jail for several days after the expiration of his jail term was *not* a prisoner during the period after expiration of the term]; *Peterson v. County of Los Angeles* (1986) 185 Cal.App.3d 705, 709 [230 Cal.Rptr. 80] [a person injured in a correctional institution while on "a voluntary tour of county penal institutions" would not be considered a "prisoner" for the purposes of Gov. Code, § 844].)

According to case authority, "to come within the purview of [Government Code] section 844.6, a prisoner must be a person confined in a correctional

nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, the pleading may properly set forth alternative theories in varied and inconsistent counts."].)

facility or institution *under the authority of law enforcement authorities or legal process." (Patricia J., supra,* 61 Cal.App.3d at p. 287, italics added.) Further, for the purposes of the Tort Claims Act, "the deprivation of liberty by lawful process or some kind of involuntary restraint characterizes one's status as a prisoner or inmate . . . ." (*Sahley v. County of San Diego* (1977) 69 Cal.App.3d 347, 349 [138 Cal.Rptr. 34] (*Sahley*) [collecting cases].)

Applying these authorities, we conclude that Esperanza was not a prisoner within the meaning of Government Code section 844. Under the program set up by the PPWASPA, Esperanza had not been "booked" or "lawfully arrested" or placed in the facility "pursuant to penal processes" as referred to in Government Code section 844. Nor was she a prisoner under the commonly understood meaning of that term, as she was not in legal custody and charged with an offense, was not serving time on a sentence and was not held under restraint. Further, Esperanza was not in the facility "under the authority of law enforcement authorities or legal process" (*Patricia J., supra,* 61 Cal.App.3d at p. 287), or by "involuntary restraint" (*Sahley, supra,* 69 Cal.App.3d at p. 349), as the term "prisoner" is described by case law construing the Tort Claims Act.

Significantly too, there is nothing in the PPWASPA to suggest that a child of a woman sentenced to that program has the status of an inmate when the child resides in a facility created under that statute.[14] Instead, Esperanza resided in the facility because her mother was housed there, not because she was the subject of any legal restraint. Because Esperanza was not confined in the facility under any legal compulsion, the most analogous authority is *Sullivan,* in which the plaintiff was not a prisoner during the time that he resided in the jail facility without any lawful authority authorizing his confinement. (*Sullivan, supra,* 12 Cal.3d at p. 717.) In sum, all of the applicable authority points toward the conclusion that Esperanza was not a prisoner as that term is used in Government Code section 844.[15]

---

[14] In describing the eligibility requirement for a woman's participation in the program, the PPWASPA states that "[f]or women with children, at least one eligible child shall reside with the mother in the facility." (Pen. Code, § 1174.4, subd. (a)(1).) Further the PPWASPA states that in deciding whether to recommend that a woman be sentenced to the program, a sentencing court should consider "[w]hether participation by the defendant and her eligible children is deemed to be in the best interests of the children." (Pen. Code, § 1174.4, subd. (b)(2).) Neither of these provisions confers inmate status on a child participating in the program.

[15] We also have consulted the legislative history of Government Code section 844, including both the report and recommendation of the California Law Revision Commission resulting in the enactment of the Tort Claims Act (A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) pp. 421–426), and certain materials, including the Senate Judiciary Committee report, from when Government Code section 844 was amended in 1996 to add what currently appears as its second sentence. (Stats. 1996, ch. 395, § 1, p. 2607; Sen.

██ Because we conclude that Esperanza was not a "prisoner" within the meaning of Government Code section 844, neither the State nor its employees are entitled to claim the protection of the special immunity provisions set forth in Government Code sections 844.6 and 845.6, which apply only to injuries incurred by prisoners. In addition, because Government Code section 845.6 does not apply to Esperanza, the Complaint does not state a cause of action against the State and Koen for "Failure to Furnish Medical Care to Prisoner" in violation of that statute.

### 4. Do the Exceptions to Public Entity Immunity Apply in This Case?

Having concluded that the provisions of the Tort Claims Act concerning injuries to prisoners do not apply to Esperanza's causes of action for negligence, negligent infliction of emotional distress or intentional infliction of emotional distress against the State, we next proceed to consider whether the Complaint adequately pleads the liability of the State to Esperanza based on the two general exceptions to the public entity immunity contained in the Tort Claims Act, i.e., (1) vicarious liability for the act or omissions of a public employee (Gov. Code, § 815.2), and (2) liability for breach of a mandatory statutory duty (id., § 815.6).[16]

### a. Vicarious Liability

As we have explained, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative" (Gov. Code, § 815.2, subd. (a)), except "where the employee is immune from liability" (id., subd. (b)).

---

Com. on Judiciary, Analysis of Sen. Bill No. 1493 (1995–1996 Reg. Sess.) as amended Apr. 8, 1996; see also *Teter v. City of Newport Beach* (2003) 30 Cal.4th 446, 453, 455 [133 Cal.Rptr.2d 139, 66 P.3d 1225] [considering the legislative history of Gov. Code, § 844].) Those materials are consistent with our conclusion that a child residing in a facility created pursuant to the PPWASPA is not a "prisoner" for the purposes of the immunity set forth in the Tort Claims Act. Indeed, the Law Revision Commission report explains that governmental immunity from tort liability to prisoners was required because "[t]he demands of correctional policy require that [an inmate] be subject to strict disciplinary control by prison officials . . ." (5 Cal. Law Revision Com. Rep., *supra*, at p. 421), and policy decisions for treating prisoners "entail the administration of special punishments for infractions of discipline . . . which, under some circumstances, may result in discomfort, mental anguish or even physical injury to the prisoner" (*id.* at p. 425). Such considerations do not come into play in the case of a child participating in a program created under the PPWASPA.

[16] We need not consider Esperanza's causes of action against Koen for negligence, negligent infliction of emotional distress or intentional infliction of emotional distress because Koen did not demur to them. However, we will nevertheless have occasion to consider the substance of Esperanza's claims against Koen when we discuss whether the Complaint adequately pleads causes of action against the State based on a theory of vicarious liability.

The Complaint identifies acts or omissions by two employees of the State, namely Koen and Sanders, that allegedly give rise to causes of action for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress. Specifically, the Complaint alleges that Koen and Sanders were acting as "jailers" and supervisory employees at the facility, within the scope of their employment, when they denied a request from Lawson that they arrange for Esperanza to receive treatment for a serious medical condition. The State has identified no immunity that would bar the liability of either Koen or Sanders.[17] Accordingly, as long as the Complaint adequately pleads the elements of negligence, negligent infliction of emotional distress and intentional infliction of emotional distress against Koen and Sanders, it also adequately pleads the vicarious liability of the State for those causes of action.

### i. Negligence Cause of Action

■ We first consider whether the Complaint adequately pleads a negligence cause of action against Koen and Sanders. " ' "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. . . ." . . . [¶] The existence of a duty of care is a question of law to be determined by the court alone. . . .' " (*Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1093–1094 [16 Cal.Rptr.3d 521], citations omitted.)

■ The central issue is whether, as a matter of law, Koen or Sanders would have a legal duty to obtain medical care for Esperanza under the circumstances described in the Complaint. "Under traditional tort law principles, a person is . . . under no duty to protect another person from harm. [Citation.] An affirmative duty to protect another from harm may arise, however, where a 'special relationship' exists. [Citations.] Such a special relationship is typically where the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." (*Kockelman v. Segal* (1998) 61 Cal.App.4th 491, 498–499 [71 Cal.Rptr.2d 552].)

■ Case law holds that "there is a special relationship between jailer and prisoner, imposing on the former a duty of care to the latter." (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 250

---

[17] Indeed, as we have noted, in the demurrer filed by the State and Koen, Koen did not even demur to the causes of action for negligence, negligent infliction of emotional distress or intentional infliction of emotional distress, and thus, of course, offered no argument that immunity barred his liability for those causes of action.

[85 Cal.Rptr.3d 371].) "[I]mportant factors in determining whether a relationship is 'special' include vulnerability and dependence. Prisoners are vulnerable. And dependent. Moreover, the relationship between them is protective by nature, such that the jailer has control over the prisoner, who is deprived of the normal opportunity to protect himself from harm inflicted by others." (*Ibid.*) Although, as we have explained, a child residing in a facility established under the PPWASPA is not a prisoner, such a child is in the same situation of dependence and vulnerability as a prisoner. According to the facts described in the Complaint, because Esperanza's mother, Lawson, was confined in the facility and unable to take Esperanza to the hospital or another medical facility, Esperanza was solely dependent on personnel at the facility to obtain the medical care that she required. We conclude that in such a situation—where Esperanza had no other means to obtain medical care—a special relationship arose that created a duty of care on the part of jailers at the facility to protect Esperanza from harm by obtaining needed medical care.

Satisfying the other two elements of a negligence claim, the Complaint also pleads that Koen and Sanders breached the duty to obtain medical care for Esperanza, and that the breach was a proximate cause of injury to Esperanza.

Based on this analysis, we conclude that the Complaint adequately pleads that Koen and Sanders are liable for negligence toward Esperanza for actions taken within the scope of their employment. Accordingly, under the exception to governmental immunity for vicarious liability of an employee acting within the scope of his employment (Gov. Code, § 815.2, subd. (a)), the Complaint adequately pleads a cause of action for negligence against the State for the acts and omissions of Koen and Sanders.

ii. *Causes of Action for Negligent and Intentional Infliction of Emotional Distress*

We next consider whether the Complaint also adequately pleads the vicarious liability of the State to Esperanza for negligent and intentional infliction of emotional distress.

As the State pointed out in its demurrer to the Complaint, although the causes of action for negligent and intentional infliction of emotional distress do not explicitly state that they are brought only by Lawson, the allegations set forth in those causes of action give that impression. Specifically, the Complaint describes at length the mental anguish incurred by Lawson as she watched medical care being withheld from her sick child, but it does not specifically plead that Esperanza incurred emotional distress.

In their opposition to the demurrer, Lawson and Esperanza *implicitly conceded* that the causes of action for negligent and intentional infliction of emotional distress were *asserted only* by Lawson, and not by Esperanza, arguing for example that "Lawson can recover under a negligent infliction of emotional distress theory," but not making such an argument as to Esperanza. Similarly, the Petition argues only that *Lawson* (and not Esperanza) has adequately pled causes of action for negligent and intentional infliction of emotional distress.

Therefore, we conclude that the Complaint does not plead causes of action for negligent and intentional infliction of emotional distress against Koen and Sanders on behalf of Esperanza. Accordingly, the Complaint also does not adequately allege that the State is vicariously liable to Esperanza for the negligent or intentional infliction of emotional distress by any State employee.

### b. *Mandatory Statutory Duty*

As we have explained, despite the general governmental immunity set forth in the Tort Claims Act, the exception set forth in Government Code section 815.6 states that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (*Ibid.*) The term " '[e]nactment' " as used in the statute means "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6.)

We consider whether, in addition to adequately pleading that the State is vicariously liable to Esperanza for the negligence of its employees, the Complaint also pleads the direct liability of the State, based on Government Code section 815.6, under the theory that the State breached a mandatory duty imposed by an enactment.

### i. *Requirements for Establishing Public Entity Liability Based on Breach of Mandatory Duty*

Before examining the statutes that might give rise to a mandatory duty under the facts pled in the Complaint, we begin with an overview of three requirements for establishing public entity liability for breach of a mandatory duty within the meaning of Government Code section 815.6.

██ "In applying Government Code section 815.6, the first 'and foremost' precondition to liability is that 'the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken.' [Citation.] 'It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.' . . . [¶] 'Whether an enactment creates a mandatory duty is a question of law . . . .' " (*Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 926 [63 Cal.Rptr.3d 624], citations omitted (*Department of Corporations*); see also *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498–499 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*).) Courts generally conclude that an enactment creates a mandatory duty under Government Code section 815.6 "only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled," and "the required action was clear and discrete and required no evaluation of *whether* it had in fact occurred." (*de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 260 [67 Cal.Rptr.3d 253] (*de Villers*).)

"Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' " (*Haggis, supra*, 22 Cal.4th at p. 499.)

The third requirement is that the public entity's failure to fulfill the mandatory duty was a proximate cause of the injury. (*de Villers, supra*, 156 Cal.App.4th at p. 256, fn. 15.)

> ii. *The Enactment Cited by the Petition and Complaint*
> *Does Not Give Rise to a Mandatory Duty to Obtain*
> *Medical Care for Esperanza*

We now turn to the two statutes cited by the Petition and the Complaint to support the claim that the State was under a mandatory statutory duty to obtain medical care for Esperanza: Penal Code section 3410 et seq., which established the Community Prisoner Mother Program (see fn. 2, *ante*) and the PPWASPA, including its implementing regulations (Cal. Code Regs., tit. 15, § 3074.3).

With respect to the statute establishing the Community Prisoner Mother Program (Pen. Code, § 3410 et seq.), we conclude that enactment is not relevant here. As we have discussed, Lawson was not sentenced to the

Community Prisoner Mother Program, but rather to the Family Foundations Program, created by the PPWASPA.[18]

In contrast, the PPWASPA and its implementing regulations *are* relevant to this litigation because Lawson and Esperanza resided in a facility existing under the PPWASPA. However, as we will explain, we conclude that those provisions do not impose a mandatory duty on the State to obtain medical care for Esperanza. (Cal. Code Regs., tit. 15, § 3074.3.)

In support of its mandatory duty argument, the Petition cites the following portions of the PPWASPA:

"(b) Prior to sentencing, if the court proposes to give consideration to a placement, the court shall consider a written evaluation by the probation department, which shall include the following:

"(1) Whether the defendant is eligible for participation pursuant to this section.

"(2) Whether participation by the defendant and her eligible children is deemed to be in the best interests of the children.

"(3) Whether the defendant is amenable to treatment for substance abuse and would benefit from participation in the program.

"(4) Whether the program is deemed to be in the best interests of an eligible child of the defendant, as determined by a representative of the appropriate child welfare services agency of the county if the child is a dependent child of the juvenile court pursuant to Section 300 of the Welfare and Institutions Code. [¶] . . . [¶]

"(d) If the court determines that the defendant may benefit from participation in this program, the court may impose a state prison sentence with the recommendation that the defendant participate in the program pursuant to this chapter. The court shall notify the department within 48 hours of imposition of this sentence." (Pen. Code, § 1174.4.) We see nothing in this portion of the PPWASPA that concerns the provision of medical care to children participating in the program, and thus nothing that would create a mandatory duty on that subject.

---

[18] The Petition and Complaint focus specifically on Penal Code section 3412, which states that "[t]he Department of Corrections shall provide pediatric care consistent with medical standards . . . ." (*Id.*, § 3412, subd. (a).)

Next, the Petition cites the following portion of the implementing regulations for the PPWASPA:

"(g) Individualized treatment plans shall be developed for each participant and her child. The treatment plan shall be formulated as a result of an individual assessment performed by a program counselor. Each plan shall address the specific treatment needs of the participant and child including the treatment needs necessary for transitioning the participant to parole and/or another treatment program, and shall describe treatment goals for both mother and child and specific activities and services to achieve these goals. Changes to this plan may occur throughout the course of treatment and must be relevant to the participant's progress toward treatment goals. Individualized treatment plans shall address a full range of problems including those directly and indirectly related to: [¶] . . . [¶]

"(2) Physical and mental health. [¶] . . . [¶]

"(7) Treatment methods and resources.

"(h) Early childhood care and development plans shall be developed for each child and shall address issues including, but not limited to:

"(1) Immunizations and communicable diseases.

"(2) Pediatric medical care. [¶] . . . [¶]

"(i) Each participant shall be provided all of the following: [¶] . . . [¶]

"(9) Medically necessary health services pursuant to [California Code of Regulations, title 15,] section 3350 et seq.

"(j) Each participant shall be assigned a case manager and casework team, comprised of a social worker, facility manager, counselor, child development specialist, child care worker, nurse, and departmental custody staff person. The casework team will manage the participant's intake, orientation and treatment program for the duration of the 12 months." (Cal. Code Regs., tit. 15, § 3074.3.)

Although these regulations mention pediatric medical care, they do not create a mandatory duty for the State to obtain such care for children participating in the program. As we read the portion of the regulations quoted above, it provides that (1) the individual plans developed for participants in

the program and their children shall address physical health and pediatric medical care; (2) the participants in the program, i.e., the women sentenced to the program,[19] shall receive "[m]edically necessary health services pursuant to [California Code of Regulations, title 15,] section 3350 et seq.," which governs the provision of, and limitations on, medical care for prison inmates; and (3) a casework team, including a nurse, shall monitor the treatment program of the women participating in the program. The regulations reference pediatric medical care only in the context of requiring that such care be addressed in the individual plan developed for each child.[20] Significantly, the regulations (1) do not indicate the type of pediatric medical care that is to be addressed in the individual plans, and (2) do not provide that, under the individual plans, the State is to be the party responsible for ensuring that pediatric care is available.[21]

As none of the enactments identified in the Complaint or the Petition provide a mandatory duty for the State to obtain medical care for Esperanza,[22] we conclude that the exception to governmental immunity set forth in Government Code section 815.6 does not apply. Accordingly, the Complaint does not state a direct claim against the State under the theory that it breached a mandatory statutory duty to Esperanza.

### 5. Summary of Analysis Regarding the State and Koen's Demurrer

As a result of our analysis of the demurrer filed by the State to the first through fourth causes of action, and by Koen to the first cause of action, we conclude that the trial court erred in sustaining the State's demurrer to the second cause of action (i.e., negligence) asserted by Esperanza, because the Complaint sufficiently pleads a claim for negligence on behalf of Esperanza

---

[19] Throughout the regulation, the term "participant" is consistently used to refer to the woman sentenced pursuant to the PPWASPA, and the term "child" is used to refer to a child residing with his or her mother in the program. (Cal. Code Regs., tit. 15, § 3074.3.)

[20] In our view, the absence of a regulation or statute expressly requiring that emergency medical care be provided to children residing in a facility existing under the PPWASPA is a significant and unfortunate oversight that warrants attention by the appropriate authorities.

[21] Further, because the development and execution of an individual plan concerning pediatric care would " 'involve[] the exercise of discretion' " (*Department of Corporations, supra,* 153 Cal.App.4th at p. 926) and would "lend itself to a normative or qualitative debate over whether it was adequately fulfilled" (*de Villers, supra,* 156 Cal.App.4th at p. 260), a claim for breach of a mandatory duty could not be based on the State's failure to include specific items in the plan or to adequately execute it.

[22] The Complaint also cites what it alleges is the contract between Center Point and the State, which it describes as "establish[ing] duties." However, that contract cannot give rise to "a mandatory duty imposed by an enactment," as required by Government Code section 815.6, because, as we have discussed, the term "enactment" is limited to "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6.)

against the State on the theory of vicarious liability. The trial court properly sustained (1) the State's demurrer to (a) the first, third and fourth causes of action brought by Esperanza; (b) the first, second, third and fourth causes of action brought by Lawson; and (2) Koen's demurrer to the first cause of action brought by both Esperanza and Lawson.

### B. *The Demurrer Filed by Center Point, Michon and Galston*

We next consider the Petition's challenge to the trial court's ruling sustaining the demurrer brought by Center Point, Michon and Galston to the first through fourth causes of action (i.e., for failure to furnish medical care to prisoner, negligence, negligent infliction of emotional distress and intentional infliction of emotional distress).

The trial court rested much of its ruling on the governmental immunity set forth in the Tort Claims Act, concluding that Center Point should be accorded the same immunity as the State, and that Michon and Galston should be accorded the same immunity as employees of the State. Accordingly, we examine whether the trial court correctly concluded that the governmental immunity in the Tort Claims Act applies to Center Point and its employees.

#### 1. *The Trial Court Erred in Sustaining Center Point's Demurrer on the Ground of Governmental Immunity*

As we have explained, Government Code section 815 states the general rule that "[e]xcept as otherwise provided by statute: [¶] (a) *A public entity* is not liable for an injury . . . ." (Italics added.) Further, as we have seen, Government Code section 844.6, subdivision (a) states that, aside from certain exceptions, "*a public entity* is not liable for: [¶] . . . [¶] (2) An injury to any prisoner." (Italics added.) To decide whether, as Center Point contends, it is entitled to claim the immunity set forth in these provisions, we must decide whether Center Point is a public entity.

 As defined in the Tort Claims Act, " '[p]ublic entity' includes the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." (Gov. Code, § 811.2.) According to the Law Revision Commission report, "[t]his definition is intended to include every kind of independent political or governmental entity in the State." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 811.2, p. 158.)

The Complaint does not allege that Center Point is an independent political or governmental entity. Instead, it describes Center Point as a private entity that operates the facility under contract with the State. The Complaint states that Center Point operates the facility "under contract and under legal process as set forth in the [Penal Code] between [the State] and [Center Point], by [Center Point] for and on behalf of [the State]." According to the Complaint, the facility is a "private residential correctional facility" and it is "owned/and or leased and operated by [Center Point] and by express contract with [the State] and [the] CDCR." Indeed, as an exhibit, the Complaint attaches the alleged contract between Center Point and the CDCR, in which Center Point is described as the "Contractor."

The Petition cites no authority, and we are aware of none, that extends the governmental immunity set forth in the Tort Claims Act to a private entity working under contract for the State, or indeed, that extends governmental immunity beyond the types of entities described in Government Code section 811.2.[23] Accordingly, we conclude that Center Point is not a "public entity" and thus is not entitled to claim the immunity set forth in the Tort Claims Act.

Center Point's demurrer asserted no argument other than governmental immunity for dismissing the causes of action for failure to furnish medical care to prisoner, negligence, negligent infliction of emotional distress and intentional infliction of emotional distress. Because, as we have explained,

---

[23] After further factual development, Center Point may be classified as an independent contractor of the State. We note that although the Tort Claims Act does not expressly address whether independent contractors of the State are entitled to the same immunity as the State under the Tort Claims Act, it strongly implies that the Legislature did not intend to confer such immunity. Specifically, the Tort Claims Act provides: "A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity." (Gov. Code, § 815.4.)

If a public entity may be liable for the acts of its independent contractors as if it were a private person, then, by implication, the independent contractor itself does not hold a special protected status under the Tort Claims Act for the acts it performs on behalf of the State. Further, we note that under the Tort Claims Act an independent contractor is not an "employee" (Gov. Code, § 810.2) and thus, by extension, not a "public employee" for purposes of any immunity conferred on public employees under the statute (*id.*, § 811.4).

With respect to the future proceedings in this action, we point out that if Esperanza can succeed in classifying Center Point as an independent contractor of the State, Esperanza may be able to rely on Government Code section 815.4 to establish the State's liability for whatever negligence Esperanza establishes as to Center Point. This liability would be in addition to the State's vicarious liability for any negligent conduct by its own employees, Koen and Sanders. Under the terms of the statute, to succeed in predicating liability on Government Code section 815.4, Esperanza would have to establish that the State would be liable for Center Point's acts or omissions if the State were a private person. (*Ibid.*)

Center Point is not entitled to governmental immunity, the trial court erred in sustaining its demurrer to those causes of action.

### 2. *Michon and Galston's Demurrer*

The trial court sustained Michon and Galston's demurrer to the first through fourth causes of action brought by Esperanza and Lawson on the ground of governmental immunity. In explaining its ruling, the trial court stated that "[b]ased on the allegations of the complaint, Defendants Michon and Galston are uncompensated public officers. As such, Michon and Galston are entitled to governmental immunity." However, that decision was flawed for two fundamental reasons.

#### a. *Michon and Galston Are Not Alleged to Be Public Employees*

First, as we will explain, Michon and Galston are not public employees entitled to the protection of the immunity conferred by the Tort Claims Act. The Complaint alleges that Michon and Galston were "[S]tate authorized employees of . . . Center Point" and "employees, through Center Point, . . . on behalf of [the State]." The alleged contract between Center Point and the CDCR, attached as an exhibit to the Complaint, states that "[t]he Contractor [i.e., Center Point] shall recruit, hire and retain qualified staff to provide 24-hour coverage, 365 days a year"; indicates that a background check prescribed by the CDCR must be performed prior to employment; and states that all Center Point employees "must be pre-approved in writing by the [CDCR] prior to physically reporting for duty." (Underscoring omitted.) Based on these statements, Michon and Galston are employees of Center Point who were, according to the applicable contractual provision, preapproved by the CDCR prior to beginning their employment at the facility.

The Tort Claims Act concerns the liability and immunity of "public employees." (See, e.g., Gov. Code, §§ 820–822.2.) That term is defined in the statute to mean "an employee of a public entity." (*Id.*, § 811.4.) As we have discussed, Center Point is not a public entity. Accordingly, because Michon and Galston are employees of Center Point, they are not "public employees" and are not covered by the liability and immunity provisions of the Tort Claims Act.[24]

---

[24] The trial court relied on *Miller, supra,* 150 Cal.App.4th 652, 666, to conclude that Michon and Galston were employed as "uncompensated public officers," and thus covered by the immunity provisions of the Tort Claims Act. However, *Miller* involved a very different situation, and is accordingly not applicable here. In *Miller,* the District Attorney of Sierra County temporarily deputized lawyers employed by the nonprofit California District Attorneys Association so they could prosecute cases, but failed to file the required written appointments to the positions, with the result that the lawyers were de facto, rather than de jure district

### b. *Even if Michon and Galston Were Public Employees, Immunity Would Not Apply*

Second, even if Michon and Galston were considered public employees for the purposes of the Tort Claims Act, that status would not confer immunity for the causes of action at issue here. As we have explained, the Tort Claims Act states that "[e]xcept as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).) Michon and Galston do not identify any statutory exception that would be applicable here.[25] Accordingly, whether or not they are classified as public employees, Michon and Galston are not protected by immunity from liability to Lawson and Esperanza.[26]

The trial court thus erred in sustaining Michon and Galston's demurrers on the basis of governmental immunity.

### 3. *Summary of Analysis Regarding Center Point, Michon and Galston's Demurrer*

As we have explained, governmental immunity does not protect Center Point, Michon and Galston from claims brought by Esperanza and Lawson,

---

attorneys. (150 Cal.App.4th at pp. 656, 664.) *Miller* held that "where a person appointed as a deputy district attorney acts under color of authority and is performing the same function as would a de jure deputy district attorney, the person is entitled to prosecutorial immunity even if his or her appointment was irregular, thereby making the person a de facto, rather than de jure, deputy district attorney." (*Id.* at p. 669.) Here, the Complaint identifies no procedure for Michon and Galston, comparable to the deputizing of lawyers by the district attorneys, that would make them de facto employees of the State.

[25] Although not identified by Michon and Galston, the immunity set forth in Government Code section 845.6 would be applicable to Lawson's cause of action for "Failure to Furnish Medical Care to Prisoner" if Michon and Galston were public employees. In that cause of action, Lawson alleges that she was injured because she was denied medications and a breast pump, which as we have concluded, did not—as currently pled in the Complaint—qualify Lawson as a prisoner "in need of immediate medical care." (Gov. Code, § 845.6.) If they were public employees, Michon and Galston would not be liable to Lawson for this alleged injury because Government Code section 845.6 states that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody . . ." with the exception, among others, of injury incurred by a prisoner in need of immediate medical care.

[26] The trial court incorrectly relied on *Miller, supra*, 150 Cal.App.4th 652, to conclude that if Michon and Galston were public employees, they would necessarily be entitled to governmental immunity. *Miller* involved a tort claim based on an allegation that the plaintiffs had been wrongly prosecuted. The Tort Claims Act specifically confers immunity on a public employee for such a claim. (Gov. Code, § 821.6 ["A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."].) Here, there is no comparable statute that would confer immunity on Michon and Galston based on the facts described in the Complaint.

and thus, because Center Point, Michon and Galston's demurrer was based solely on concepts of governmental immunity, the trial court erred in sustaining the demurrer.

We note, however, that Center Point, Michon and Galston's demurrer to the first cause of action for "Failure to Furnish Medical Care to Prisoner" pursuant to Government Code section 845.6 was properly sustained as to both Lawson and Esperanza. Government Code section 845.6 creates liability for public entities and public employees when a prisoner in need of immediate medical care is neglected by a public employee. As we have explained, (1) Center Point is *not* a public entity; (2) Michon and Galston are *not* public employees; and (3) Esperanza was *not* a "prisoner" within the meaning of Government Code section 845.6. Accordingly, Center Point, Michon and Galston cannot be liable to either Esperanza or Lawson under Government Code section 845.6.

We note also, as we have discussed above, that the Complaint does not in fact assert causes of action for negligent and intentional infliction of emotional distress by Esperanza. Those causes of action appear to be asserted only by Lawson. Thus, Center Point, Michon and Galston's demurrer to the causes of action for negligent and intentional infliction of emotional distress by Esperanza were also properly sustained by the trial court.

In sum, the trial court erred in sustaining Center Point, Michon and Galston's demurrer to (1) Lawson's causes of action for (a) negligence, (b) negligent infliction of emotional distress, and (c) intentional infliction of emotional distress; and (2) Esperanza's claims for negligence. It properly sustained the demurrer on (1) Lawson's cause of action for "Failure to Furnish Medical Care to Prisoner"; and (2) Esperanza's causes of action for (a) "Failure to Furnish Medical Care to Prisoner," (b) negligent infliction of emotional distress and (c) intentional infliction of emotional distress.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate portions of its May 1, 2009 orders and issue new orders (1) overruling the State's demurrer to Esperanza's second cause of action (i.e., negligence); (2) overruling Center Point, Michon and Galston's demurrer to Lawson's second, third and fourth causes of action (i.e., negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress); and (3) overruling Center Point, Michon and Galston's demurrer to Esperanza's second cause of action (i.e., negligence). In all other respects, the petition is denied.

The parties are to bear their own costs in the writ proceeding. (Cal. Rules of Court, rule 8.493(a)(2).)

McIntyre, Acting P. J., and Aaron, J., concurred.