Duncan ROY et al.

v.

COUNTY OF LOS ANGELES et al.

Case No. CV 12–09012 BRO (FFMx)

United States District Court, C.D. California.

Signed July 9, 2015

Ahilan T. Arulanantham, Jennifer L. Pasquarella, Katherine M. Traverso, Peter Bibring, Peter J. Eliasberg, ACLU Foundation of Southern California, Chris Newman, Jessica Karp Bansal, National Day Labor Organizing Network, Los Angeles, CA, Barrett S. Litt, Lindsay Battles, Kaye McLane Bednarski and Litt LLP, Pasadena, CA, Cecillia D. Wang, Katherine K. Desormeau, Rodkangyil Orion Danjuma, ACLU Foundation Immigrants Rights Project, San Francisco, CA, Omar C. Jadwat, ACLU Foundation Immigrants Rights Project, New York, NY, for Duncan Roy et al.

Jin S. Choi, Paul B. Beach, Justin W. Clark, Lawrence Beach Allen and Choi

PC, Glendale, CA, for County of Los Angeles et al.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [71]

The Honorable BEVERLY REID O'CONNELL, United States District Judge

## I. INTRODUCTION

Pending before the Court is a Motion for Judgment on the Pleadings filed by Defendants County of Los Angeles (the "County") and Sheriff Leroy D. Baca.[1] (Dkt. No. 71.) Defendants seek to dismiss Plaintiffs' third through eighth claims for relief, all of which arise under state law. After considering the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for resolution without oral argument of counsel. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. For the following reasons, Defendants'. motion is **GRANTED in part** and **DENIED in part.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a group of individuals who were or are currently in the custody of the Los Angeles County Sheriff's Department (the "Sheriff's Department") and who were denied either bail or release on the basis of an immigration hold. Duncan Roy ("Mr. Roy") is a British citizen who was allegedly detained for eighty-nine days pursuant to an immigration hold and Defendants' subsequent refusal to allow him to post bail. (Compl. ¶ 9.) Alain Martinez–Perez ("Mr. Martinez–Perez") is a Mexican citizen who was detained for six days after Defendants denied him bail and the district attorney declined to file criminal charges. (Compl. ¶ 10.) Annika Alliksoo ("Ms. Alliksoo") is an Estonian citizen who was detained for a total of eighteen days and held for three days after a state court judge ordered her release. (Compl. ¶ 11.) Clemente De La Cerda ("Mr. De La Cerda") is a Mexican citizen and a lawful permanent resident. (Compl. ¶ 12.) As of the date of filing, Mr. De La Cerda was still currently in the Sheriff's Department's custody pursuant to an immigration hold. (Compl. ¶ 12.)[2]

Plaintiffs initiated this putative class action on behalf of themselves and others similarly situated.[3] Collectively, Plaintiffs challenge the legality of the Sheriff's Department's practice of detaining individuals

---

1. When Plaintiffs filed the Complaint, Plaintiffs named former sheriff Leroy D. Baca ("Sheriff Baca") as a defendant in this case. Since filing, Jim McDonnell ("Sheriff McDonnell") has replaced Sheriff Baca. Pursuant to Federal Rule of Civil Procedure 25, Sheriff McDonnell "is automatically substituted as a party" to this case. See Fed. R. Civ. P. 25(d). The Court will refer to "the Sheriff" generally and to the Sheriff and County collectively as "Defendants."

2. All references to the "Government Code" or "Civil Code" shall be to the applicable California code.

3. Mr. Roy is proceeding on behalf of himself only. Mr. Martinez–Perez and Ms. Alliksoo

seek damages on behalf of all individuals injured by Defendants' practice of refusing bail requests and detaining individuals beyond the time permitted by state law. (Compl. ¶¶ 10, 11.) Mr. De La Cerda seeks equitable relief on behalf of all individuals who are currently or who will in the future be in Defendants' custody on the basis of an immigration hold. (Compl. ¶ 12.) Specifically, he seeks to bar Defendants from detaining individuals beyond the time permitted by state law "solely on the basis of an immigration hold not supported by a probable cause determination." (Compl. ¶ 12.) The Complaint also names Christian Michel Varela ("Mr. Varela") as a plaintiff in this case. (Compl. ¶ 13.) The Court has previously dismissed Mr. Varela under Federal Rule of Civil Procedure 41(b). (Dkt. No. 69.)

solely on the basis of immigration holds placed by the federal Immigration and Customs Enforcement ("ICE") agency. (Compl. ¶ 18.) Immigration holds essentially advise local law enforcement agencies that the Department of Homeland Security ("DHS") seeks to arrest or detain an alien in the agency's custody. (Compl. ¶¶ 21–22.) According to Plaintiffs, immigration holds are voluntary administrative requests that are not accompanied by the same procedural protections as a criminal detainer or hold. (Compl. ¶¶ 33–34.) For example, ICE agents may assign an immigration hold without probable cause to believe that a person is removable and without a warrant or court order authorizing a person's deportation. (Compl. ¶¶ 26–27.) Plaintiffs allege that the Sheriff's Department's practice of honoring immigration holds has resulted in numerous and widespread unlawful detentions, as the issuance of an immigration hold "does not ensure that ICE will assume custody over the detainee or that ICE will take any action against the detainee." (Compl. ¶ 37.)

Plaintiffs challenge two of the Sheriff's Department practices related to immigration holds. First, Plaintiffs assert that the Sheriff's Department has engaged in a pattern and practice of unlawfully denying bail to inmates subject to an immigration hold, thereby preventing these individuals from securing their release pending resolution of the charges against them. (Compl. ¶¶ 1, 38–47.) Pursuant to this practice, the Sheriff's Department allegedly codes the record of every individual subject to a hold with a "no bail" notation, regardless of the individual's bail eligibility under state law. (Compl. ¶ 40.) Plaintiffs allege that the Sheriff's Department has "routinely turned away and refused to accept lawfully-tendered bail bonds from bail bondsmen, family members and others when they attempt to lawfully post bail for an inmate." (Compl. ¶ 41.)

Plaintiffs also contest the Sheriff's Department's practice of detaining individuals solely on the basis of an immigration hold and beyond the time or authority permitted under state law to hold an inmate in custody. (Compl. ¶¶ 2, 48–50.) To that end, Plaintiffs allege that the Sheriff's Department continues to detain inmates subject to immigration holds even when no charges have been filed against them, they have served their sentence, they have posted bail, they are ordered released on their own recognizance, or a jury has acquitted them. (Compl. ¶ 49.) According to Plaintiffs, ICE does not permit local law enforcement agencies to hold an alien for more than forty-eight hours beyond the time he or she would otherwise be released from custody. (Compl. ¶ 23.) Plaintiffs allege that the Sheriff's Department nevertheless "regularly" detains individuals beyond this forty-eight hour time frame. (Compl. ¶ 49.)

Plaintiffs initiated this action on October 19, 2012, alleging that these two practices violate federal and California state law. (Dkt. No. 1.) Plaintiffs' first and second claims allege Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983. The instant motion does not challenge these claims. Rather, Defendants seek to dismiss Plaintiffs' third through eighth claims, all of which arise under California state law. (Dkt. No. 71.) Plaintiffs' third and fourth claims allege violations of the California Constitution; the fifth and seventh claims allege false imprisonment and negligence per se; and Plaintiffs' sixth and eighth claims allege violations of the California Government Code and California Civil Code.[4] Plaintiffs

---

4. All references to the "Government Code" or "Civil Code" shall be to the applicable California code.

have opposed Defendants' Motion for Judgment on the Pleadings, (Dkt. No. 80), and Defendants timely replied, (Dkt. No. 83).

## III. LEGAL STANDARD

After the pleadings are closed but early enough not to delay trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988) (quoting *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984)). The standard applied to Rule 12(c) motions is fundamentally similar to that applied to Rule 12(b)(6) motions. "All allegations of fact by the party opposing the motion are accepted as true," and the complaint is construed in the light most favorable to the non-moving party. *Id.* "[C]onclusory allegations without more" are insufficient to defeat a motion for judgment on the pleadings. *Id.*

As with Rule 12(b)(6) motions, a district court generally may not consider material beyond the pleadings in ruling on a Rule 12(c) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Nevertheless, the court may consider "material which is properly submitted as part of the complaint." *Id.* The court may also consider documents not physically attached to the complaint so long as their authenticity is not contested and the complaint relies on them. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001). Finally, the court "may take judicial notice of 'matters of public record.'" *Id.* at 688–89 (quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). Because the court may consider these materials, it need

not accept as true "allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." 5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004).

## IV. DISCUSSION

### A. Plaintiffs' Compliance with the California Tort Claims Act

Defendants contend that Plaintiffs' third through eighth claims must be dismissed to the extent they are brought by Mr. Martinez–Perez and Mr. De La Cerda. According to Defendants, these individuals' failure to allege compliance with the California Tort Claims Act ("Claims Act") bars their claims under state law. (Mot. for J. on the Pleadings at 3–4.) The Court begins with a brief overview of the Claims Act's relevant provisions. The Court then addresses whether the Act precludes Mr. Martinez–Perez or Mr. De La Cerda from proceeding in this case.

Government Code section 911.2 conditions the right to sue a public entity on the timely presentation of a claim. Cal. Gov't Code § 911.2(a) ("A claim relating to a cause of action for death or for injury to person ... shall be presented as provided in Article 2 ... not later than six months after the accrual of the cause of action."); *see also Golden Day Sch., Inc. v. Pirillo*, 118 F.Supp.2d 1037, 1047 (C.D.Cal.2000). "The Ninth Circuit has held that [s]ection 911.2 does not create mere procedural requirements, but instead provides elements of and conditions precedent to a plaintiff's state claims." *Golden Day Sch.*, 118 F.Supp.2d at 1047 (citing *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir.1969) ("In California[,] statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are more than procedural requirements. They are elements of the plaintiff's cause of action

and conditions precedent to the maintenance of the action.")). Where the presentation requirements apply, a plaintiff may not bring suit until he or she presents a claim to the public entity and the entity's board acts upon or rejects the claim. *See* Cal. Gov't Code § 945.4.

Plaintiffs allege that Mr. Roy and Ms. Alliksoo each filed administrative tort claims against the Sheriff's Department on behalf of themselves and a putative class.[5] (Compl. ¶¶ 133, 135.) But Plaintiffs do not allege whether Mr. Martinez–Perez or Mr. De La Cerda filed administrative claims before initiating suit. Defendants argue that this pleading deficiency requires the dismissal of Mr. Martinez–Perez and Mr. De La Cerda's state law claims. Plaintiffs maintain the claims should not be dismissed, arguing that the presentation requirement does not apply to Mr. De La Cerda and that Mr. Martinez–Perez is included in the classes identified in Mr. Roy and Ms. Alliksoo's administrative claims.

### 1. Mr. De La Cerda

■ With respect to Mr. De La Cerda, Plaintiffs assert that the Claims Act does not apply because he seeks only injunctive and declaratory relief. (Opp'n at 4.) Indeed, by the Act's express terms, the presentation requirements apply only to suits for "money or damages." *See Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan*, 150 Cal.App.4th 1487, 1493, 59 Cal.Rptr.3d 587 (2007) (citing Cal. Gov't Code §§ 905, 945.4), as modified on denial of reh'g June 8, 2007, as modified June 11, 2007. The statute does not apply "to nonpecuniary actions, 'such as those seeking injunctive, specific or declaratory relief.'" *Id.* (quoting *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 147 Cal.App.3d 1071, 1081, 195 Cal.Rptr. 576 (1983)). Because Mr. De La Cerda seeks only injunctive and declaratory relief, (*see* Compl. ¶¶ 12, 87), his failure

to allege compliance with the Claims Act's presentation requirements provides no basis for the dismissal of his claims.

### 2. Mr. Martinez–Perez

Mr. Martinez–Perez seeks money damages, (*see* Compl. ¶ 10), and must therefore satisfy the Claims Act's requirements. Plaintiffs argue that his failure to affirmatively allege compliance is immaterial because two other class representatives, Mr. Roy and Ms. Alliksoo, filed timely claims. (Opp'n at 4–7.) Plaintiffs base this argument on the California Supreme Court's decision in *City of San Jose v. Superior Court*, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701 (1974). In *City of San Jose*, the court addressed the issue of whether and when a class claim may satisfy the Claims Act's presentation requirements. The court first rejected the notion that each individual class member must present a claim in accordance with the Act. *City of San Jose*, 12 Cal.3d at 457, 115 Cal. Rptr. 797, 525 P.2d 701 ("To require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them.").

Having concluded that the Claims Act permits class claims, City of San Jose adopted a two-part test for determining when a class claim satisfies the statute's presentation requirements: (1) "[i]s there some compliance with all of the statutory requirements?" and (2) "if so, is this compliance sufficient to constitute substantial compliance?" *Id.* at 456–57, 115 Cal.Rptr. 797, 525 P.2d 701. With respect to the first prong of the test, the court reasoned that class claims "must provide the name, address, and other specified information concerning the representative plaintiff and then sufficient information to identify and

---

5. Although Mr. Roy is not pursuing claims in a representative capacity, (*see* Compl. ¶ 62), his administrative claim gave notice of a putative class action, (*see* Compl. ¶ 133).

make ascertainable the class itself. Because such information would meet the statutory requirements . . ., any effort to identify the class would satisfy the some compliance test." *Id.* at 457, 115 Cal.Rptr. 797, 525 P.2d 701. Beyond this initial showing, the second prong controls and requires that the administrative claim contain sufficient information "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *Id.* at 456, 115 Cal.Rptr. 797, 525 P.2d 701; *see also Ardon v. City of L.A.*, 52 Cal.4th 241, 248, 128 Cal. Rptr.3d 283, 255 P.3d 958 (2011); *Eaton v. Ventura Port Dist.*, 45 Cal.App.3d 862, 868, 119 Cal.Rptr. 746 (1975) (to show substantial compliance, the claim must at a minimum "contain sufficient information to enable the governmental entity, either from its own records . . . or from the claim itself, to reasonably determine the circumstances which it is claimed give rise to liability and the possible outer limits of that liability.").

▮ The claims filed by Mr. Roy and Ms. Alliksoo are nearly identical.[6] (*See* Deck of Jennifer Pasquarella in Supp. of Opp'n ("Pasquarella Deck") Exs. A, B.) Both were filed on behalf of the claimant and "similarly situated persons" who the Sheriff's Department detained and "who were entitled to be released from custody (for example, because they were eligible for release on bail), but were denied release (such as by refusing to allow the posting of bail) because of the existence of an immigration hold." (*Id.* Exs. A at 2–3, B at 2–3.) Both define two sets of classes seeking relief on behalf of persons detained by the Sheriff's Department, subject to an immigration hold, entitled to release under state law, and denied release pursuant to the hold. (*Id.* Exs. A at 5, B at 5–6.) And both anticipate identical legal claims, including constitutional violations of the rights to be free from unreasonable searches and seizures, to privacy, and to due process, as well as state claims for false imprisonment, negligence, and violations of Civil Code section 52.1 and Government Code section 815.6. (*Id.* Exs. A at 6, B at 6.)

The claims clearly satisfy *City of San Jose's* "some compliance" prong, as they specify Mr. Roy and Ms. Alliksoo's names and addresses; the dates, places, and circumstances giving rise to the claims; the names of the public employees and entities causing the alleged harm; a general description of the injuries and legal claims; and that the claims are not limited civil claims. (*See generally id.* Exs. A and B.)

6. Exhibits A and B represent the amended administrative claims filed by Mr. Roy and Ms. Alliksoo, respectively. Defendants object to these exhibits on the grounds that they contain matters outside the scope of the Complaint and constitute inadmissible hearsay. (*See* Reply at 17.) Defendants' first objection is unavailing, as the Court may take judicial notice of matters of public record, *see Lee*, 250 F.3d at 688–89, and both Exhibits A and B bear a public filing stamp indicating that the claims were recorded with the County of Los Angeles. Defendants' hearsay objection also lacks merit, as it misconstrues the purpose for which Exhibits A and B are offered. In considering whether Mr. Roy and Ms. Alliksoo's administrative claims satisfy the Claims Act with respect to Mr. Martinez–Perez, the Court has only taken judicial notice of the existence of the matters contained within these claims, not their truth or veracity. *See United States v. S. Cal. Edison Co.*, 300 F.Supp.2d 964, 975 (E.D.Cal.2004) ("While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean."). The exhibits therefore do not constitute hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as an out of court statement offered to prove the truth of the matter asserted).

This is sufficient to demonstrate "some compliance" with the Claims Act. *See* Cal. Gov't Code § 910 (setting forth the requirements for a valid administrative claim).

Mr. Roy and Ms. Alliksoo's claims also satisfy the "substantial compliance" prong. The factual and legal basis for Mr. Roy and Ms. Alliksoo's class claims is similar to the basis for Mr. Martinez–Perez's claims, as all relate to the same pattern and practice of allegedly unlawful conduct—that is, the Sheriff's Department's unlawful detention of individuals pursuant to an immigration hold and unjustified refusal to release such individuals or permit them to post bond. Although the particular facts giving rise to Mr. Martinez–Perez's claims differ slightly from the facts giving rise to Mr. Roy and Ms. Alliksoo's,[7] the basic nature of his claims is identical to those of the class. Like Mr. Roy and Ms. Alliksoo, Mr. Martinez–Perez contends that state law permitted him to post bail to secure his release, and that Defendants unlawfully detained him pursuant to an immigration hold. Mr. Roy and Ms. Alliksoo's administrative claims are therefore sufficient to include Mr. Martinez–Perez. *See Craft v. Cnty. of San Bernardino*, CV No. 05–00359 SGL, 2006 WL 4941829, at *6, 2006 U.S. Dist. LEXIS 96979, at *17–18 (C.D.Cal. March 24, 2006) (finding substantial compliance where the class claims shared a factual and legal basis and where all of the class claims "relate to a finite event—the allegedly 'unnecessary, unreasonable and illegal strip and body cavity

searches' of those in the County's custody."). Accordingly, Mr. Martinez–Perez's failure to file an administrative claim does not foreclose his ability to proceed or pursue any of the state law claims alleged in the Complaint. *Id.* (finding that the fact two class representatives failed to file administrative claims before initiating suit did not bar their claims where a different representative submitted a claim in substantial compliance with section 910).

## B. Whether Government Code Section 844.6 Bars Plaintiffs' State Law Claims

Defendants also contend that Plaintiffs' state law claims fail under one of the Claims Act's immunity provisions, section 844.6. Subject to certain exceptions not applicable here, section 844.6 accords broad public entity immunity and provides that such entities are not liable for "[a]n injury to any prisoner." Cal. Gov't Code § 844.6(a)(2). As Defendants argue, because Plaintiffs were inmates at the time of the alleged injuries giving rise to their claims for relief, section 844.6 bars these claims in their entirety.[8] (Mot. for J. on the Pleadings at 4–5.)

Plaintiffs cite to *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 117 Cal.Rptr. 241, 527 P.2d 865 (1974), for the proposition that section 844.6 does not apply to claims resulting from unlawful detention. (Opp'n at 7–8.) In *Sullivan*, the California Supreme Court held that section 844.6 immunity does not apply to cases of false

---

7. For example, Mr. Martinez–Perez alleges he was entitled to release under state law once the district attorney determined that no charges should be filed against him. (Compl. ¶ 68.) Mr. Roy's administrative claim, on the other hand, indicates that state law required his release when a magistrate judge ordered and approved his bail, (Pasquarella Decl. Ex. A), whereas Ms. Alliksoo's claim indicates she should have been released once a judge ordered her released upon her own recognizance, (*id.* Ex. B).

8. Although Defendants do not acknowledge as much, the Court notes that section 844.6 expressly applies to public entities only, not public employees. *See* Cal. Gov't Code § 844.6. Accordingly, the immunity provided therein, if applicable, would only void Plaintiffs' claims against the County.

imprisonment. *Id.* at 717, 117 Cal.Rptr. 241, 527 P.2d 865. The plaintiff in that case was held for several days after the expiration of a misdemeanor sentence, apparently due to the superior court's failure to issue a release order after dismissing the felony counts against him. *Id.* at 713–14, 117 Cal.Rptr. 241, 527 P.2d 865. Following his release, the plaintiff sued the county for false imprisonment. *Id.* at 714, 117 Cal.Rptr. 241, 527 P.2d 865. In finding that section 844.6 did not bar the plaintiff's false imprisonment claim, the *Sullivan* court reasoned as follows:

> In a false imprisonment case, the "injury" suffered by an individual is the illegal confinement itself rather than any detriment occurring after imprisonment; in other words, false imprisonment is not an "injury to a prisoner" but instead is an injury to a non-prisoner which converts him into a prisoner. Although the county emphasizes that plaintiff had already been confined in jail at the time of the alleged false imprisonment, the [l]egislature surely did not intend to distinguish between an individual who is wrongfully deprived of his liberty before his jail term starts and one wrongfully deprived of his liberty after his jail term ends. Continued confinement cannot legally make him a "prisoner" when the jail term has expired; in the eyes of the law[,] plaintiff is no longer a "prisoner."

*Id.* at 716–17, 117 Cal.Rptr. 241, 527 P.2d 865.

Defendants concede that under *Sullivan,* section 844.6 does not apply to or bar Plaintiffs' fifth claim for false imprisonment. (*See* Reply at 14.) Nevertheless, Defendants maintain that Plaintiffs' attempt to extend *Sullivan's* false imprisonment holding to all claims for unlawful detention is unwarranted and overbroad. The Court agrees that *Sullivan's* reach was limited to claims for false imprisonment but nevertheless recognizes that its reasoning may be persuasive with respect to Plaintiffs' remaining state law claims, as each relies on the basic allegation that Defendants unlawfully detained Plaintiffs beyond the time permitted under state law. As section 844.6 confers immunity only with respect to claims of injury "to any prisoner," the relevant inquiry is whether, at the time of their alleged unlawful detentions, Plaintiffs were "prisoners" within the meaning of the statute.

The Claims Act defines "prisoner" to "include[ ] an inmate of a prison, jail, or penal or correctional facility." Cal. Gov't Code § 844. The definition goes on to explain that "a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked ... becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes." *Id.* The legislative committee notes also provide some guidance, indicating that persons in the custody of law enforcement undergoing medical treatment in a county hospital would be considered "prisoners," but that persons on parole would not. *Id.*

In interpreting section 844, the California Court of Appeal has observed that "[i]t is not clear whether the statutory definition is intended to be exhaustive of all circumstances in which a person may be prisoner." *Lawson v. Superior Court,* 180 Cal.App.4th 1372, 1386, 103 Cal.Rptr.3d 834 (2010) (comparing *Larson v. City of Oakland,* 17 Cal.App.3d 91, 97, 94 Cal. Rptr. 466 (1971) (finding that for purposes of section 844, "that which is not included is excluded") and *Datil v. City of L.A.,* 263 Cal.App.2d 655, 658, 69 Cal.Rptr. 788 (1968) (noting that the word "includes" as used by section 844 "is a word of enlargement and not of limitation")). The *Lawson* court assumed that section 844 is not exhaustive and accordingly looked to the "commonly understood meaning of the

term 'prisoner,'" including a person serving time in prison, a person apprehended by and in the custody of law enforcement, and a person held under restraint. *Id.* The court also surveyed the relevant case law and found that, "for the purposes of governmental immunity, mere presence in a correctional facility—whether voluntarily or involuntary—is not sufficient to confer the status of 'prisoner' on the person injured." *Id.* Rather, "to come within the purview" of section 844.6, "a prisoner must be a person confined in a correctional facility or institution under the authority of law enforcement authorities or legal process." *Id.* at 1386–87, 103 Cal.Rptr.3d 834 (internal quotation marks omitted) (quoting *Patricia J. v. Rio Linda Union Sch. Dist.*, 61 Cal.App.3d 278, 287, 132 Cal.Rptr. 211 (1976)). This is because "the deprivation of liberty by lawful process or some kind of involuntary restraint [is what] characterizes one's status as a prisoner or inmate." *Id.* at 1387, 103 Cal.Rptr.3d 834 (internal quotation marks) (quoting *Sahley v. Cnty. of San Diego,* 69 Cal.App.3d 347, 349, 138 Cal.Rptr. 34 (1977)).

In *Lawson,* the court concluded that an inmate's child who resided in a prison facility was not a "prisoner" within the meaning of section 844 because she was not "the subject of any legal restraint" or "confined ... under any legal compulsion." *Id.* The court looked to *Sullivan* and reasoned that, like the inmate there, who "was not a prisoner during the time he resided in the jail facility without any lawful authority authorizing his confinement," the child similarly was not held pursuant to legal authority or the legal process. Thus, the child "was not a prisoner as that term is used in ... section 844." *Id.*

In *Zeilman v. County of Kern,* 168 Cal. App.3d 1174, 214 Cal.Rptr. 746 (1985), the California Court of Appeal reversed summary judgment in favor of the county because triable issues existed with respect to whether the plaintiff was a prisoner within the meaning of section 844. The decision in *Zeilman* turned on the fact that the plaintiff's attorney secured an order authorizing the plaintiff's immediate release upon completion of the booking process. *Id.* at 1182–83, 214 Cal.Rptr. 746. Because there was a genuine factual issue as to whether the booking process was complete at the time of the plaintiff's injury, there was also a genuine dispute as to whether the plaintiff was lawfully confined. *Id.* at 1183, 214 Cal.Rptr. 746; *see also Reed v. Cnty. of Santa Cruz,* 37 Cal.App.4th 1274, 1278, 44 Cal.Rptr.2d 149 (1995) (discussing *Zeilman* and reasoning that "[a]s the completion of the booking process should have resulted in Zeilman's release, the appellate court logically concluded that there was a genuine factual issue as to whether Zeilman was being confined by lawful authority at the time of her fall.").

■■■ Based on the allegations in the Complaint, Plaintiffs here are analogous to those in *Sullivan, Lawson,* and *Zeilman.* In essence, Plaintiffs allege they were detained pursuant to immigration holds even though state law authorized their release, whether because the charges against them were dismissed, they were acquitted, a judge ordered their release, they had served their sentence, or they were entitled to post bail. (Compl. ¶¶ 1, 4, 38–50.) Although Plaintiffs may initially have been taken into custody and held "under the authority of law enforcement authorities or legal process," *Lawson,* 180 Cal.App.4th at 1386–87, 103 Cal.Rptr.3d 834, Plaintiffs' continued detention beyond the time authorized by state law could constitute unlawful confinement. Critical to *Sullivan, Lawson,* and *Zeilman*'s conclusion that the plaintiffs there were not "prisoners" was the finding that they were not held pursuant to any lawful authority. Because the Court must assume the truth of the allegations at this stage of the proceedings, *see McGlinchy,* 845 F.2d at 810, and because

Plaintiffs allege facts which, if true, would suggest Defendants detained them "without any lawful authority authorizing [their continued] confinement," *see Lawson,* 180 Cal.App.4th at 1387, 103 Cal.Rptr.3d 834 (discussing *Sullivan* ), the Court cannot conclude as a matter of law that Plaintiffs were "prisoners" within the meaning of section 844. Accordingly, Defendants have failed to demonstrate that section 844.6 bars Plaintiffs' state law claims.

### C. Whether Plaintiffs May Seek Money Damages for Violations of Article I, Sections 7 and 13 of the California Constitution

Plaintiffs' third and fourth claims allege violations of article I, sections 7 and 13 of the California Constitution. (Compl. ¶¶ 145–52.) Defendants contend that these claims fail because neither provision is "self-executing." [9] (Mot. for J. on the Pleadings at 5–6.) As discussed in further detail below, sections 7 and 13 do not confer private rights of action for damages. Thus, to the extent Plaintiffs' third and fourth claims seek monetary relief for alleged violations of state constitutional rights, these claims must be dismissed.

#### 1. Article I, Section 7

Article I, section 7 provides that "[a] person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. 1, § 7, subd. (a). The California Supreme Court considered whether article I, section 7(a) affords a right to money damages in *Katzberg v. Regents of University of California,* 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002). The *Katzberg* decision begins by adopting a framework for determining whether a state constitutional provision provides an action for damages. *See id.* at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. Applying this framework, the court held that article I, section 7 does not. *Id.*

■ *Katzberg* is controlling and dispositive of Plaintiffs' third claim to the extent Plaintiffs seek damages for violations of their due process rights. Plaintiffs apparently concede as much, (*see* Opp'n at 20), but nevertheless argue that article I, section 7(a) provides a basis for liability under Civil Code section 52.1 and Government Code section 815.6, (*see id.* at 21–23). Plaintiffs' sixth and eighth claims allege violations of these statutory provisions. (Compl. ¶¶ 161–68, 174–79.) But whether article I, section 7(a)'s due process guarantee provides a basis for statutory liability is inapposite. Pursuant to *Katzberg,* it is clear that Plaintiffs may not seek money damages for violations of their state constitutional due process rights.[10] Thus, to the

---

9. Defendants' repeated reference to the phrase "self-executing" is misleading. Article I, section 26 of the California Constitution states that "[t]he provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." Cal. Const. art. I, § 26. Accordingly, all government actors must comply with state constitutional imperatives, and "[e]very constitutional provision is self-executing to this extent, that everything done in violation of it is void." *Oakland Paving Co. v. Hilton,* 69 Cal. 479, 484, 11 P. 3 (1886); *see also Katzberg v. Regents of Univ. of Cal.,* 29 Cal.4th 300, 306–07, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002). The relevant inquiry here is not whether article I, sections 7 and 13 are "self-

executing," as both provisions are, nor whether these provisions authorize claims for declaratory or injunctive relief, as both provisions do. *See Katzberg,* 29 Cal.4th at 307, 127 Cal.Rptr.2d 482, 58 P.3d 339. Thus, the Court considers only whether article I, sections 7 and 13 may support a cause of action for money damages.

10. Plaintiffs similarly argue that article I, section 13 provides a basis for liability on their sixth and eighth claims. Again, however, whether the violation of a state constitutional right may support a statutory claim under Civil Code section 52.1 or Government Code section 815.6 is a separate and distinct inquiry from whether that same state constitutional

extent Plaintiffs' third claim seeks such relief, this claim is **DISMISSED**.

### 2. Article I, Section 13

Article I, section 13 guarantees the right to be free from unreasonable searches and seizures. *See* Cal. Const. art. I, sec. 13. As discussed above, California courts have expressly rejected damages actions for violations of the right to due process. *See Katzberg,* 29 Cal.4th at 329, 127 Cal. Rptr.2d 482, 58 P.3d 339; *see also Javor v. Taggart,* 98 Cal.App.4th 795, 807, 120 Cal. Rptr.2d 174 (2002) ("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution."). The California Supreme Court has not, however, addressed whether a plaintiff may seek damages for a violation of article I, section 13.

Various federal district courts facing the issue have concluded that article I, section 13 does not permit actions for money damages. Some of these decisions appear to adopt *Katzberg's* general reasoning with respect to article I, section 7(a) without specifically addressing or employing its framework to section 13. *See, e.g., Rendon v. Fresno Police Dep't,* CV No. 05–00661, 2006 WL 2694678 OWW, at *21–22 (E.D.Cal. Sept. 18, 2006) ("According to *Katzberg,* Plaintiff cannot bring a damages claim under §§ 7 or 13 of the California Constitution, in part because alternative statutory and/or common law causes of action are available to redress his grievance."); *Craft,* 2006 WL 4941829, at *3–4, 2006 U.S. Dist. LEXIS 96979, at *10–11 ("Defendants next assert that plaintiffs cannot bring a suit for monetary damages for a violation of sections seven or thirteen to article one to the California Constitution. On this point, defendants are on firm footing as the California Supreme Court has held litigants cannot bring a damage

claim directly under those sections to the California Constitution, in part because alternative statutory and/or common law causes of action remain available to redress such grievances."). Others, while not expressly relying on *Katzberg,* similarly reason that damages actions are not available because of the existence of alternative statutory or common law claims. *See, e.g., Lopez v. Youngblood,* 609 F.Supp.2d 1125, 1142 (E.D.Cal.2009); *Brown v. Cnty. of Kern,* CV No. 06–00121, 2008 WL 544565 OWW, at *17 (E.D.Cal. Feb. 26, 2008) ("Plaintiff cannot bring a damages claim directly under Article I, Sections 7 or 13 of the California Constitution, in part because alternative statutory and/or common law causes of action are available to redress his grievances."); *see also Arroyo v. Tilton,* CV No. 11–01186, 2012 WL 1551655 DLB, at *7 (E.D.Cal. Apr. 30, 2012) (citing *Brown*).

■ These cases, while persuasive, do not clearly dispose of the issue, as they do not employ the framework mandated by *Katzberg.* As indicated above, *Katzberg* sets forth a two-step inquiry for determining the existence of a damages action. First, courts must "inquire whether there is evidence from which [the court] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation." 29 Cal.4th at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. In doing so, courts may consider "the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." *Id.* If there is no affirmative intent to authorize or deny a damages action, the court must then undertake a "constitutional tort" analysis, considering various factors

right provides an independent basis for monetary relief.

such as "whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." *Id.* If the factors "militate against" a constitutional tort, the inquiry ends; but if the factors favor such a tort, the court must also consider "any special factors counseling hesitation." *Id.*

The district court in *Wigfall v. City and County of San Francisco* examined article I, section 13 and applied *Katzberg's* analytical framework to determine whether a plaintiff may seek damages under the provision. Beginning with the question of intent, the court noted that the provision's plain text "does not contain any specific authority for the recovery damages." *See* CV No. 06–04968, 2007 WL 174434 VRW, at *5 (N.D.Cal. Jan. 22, 2007). The court also found that, similar to article I, section 7(a), section 13 "contains [only] general principles of law" and therefore does not compel any inference of an intent to authorize an action for money damages. *Id.* Finally, the court considered the provision's legislative history and found no evidence to suggest the State of California "affirmatively intended to create a damages remedy." *Id.*

Finding no intent to authorize or deny a damages action, the *Wigfall* court proceeded to *Katzberg's* second prong and the constitutional tort inquiry. The court focused on the availability of alternative remedies under state and federal law. *Id.* at 5–6. The plaintiffs could, for example, pursue state civil actions for money damages, as well federal claims under 42 U.S.C. § 1983. *Id.* Conceding that article I, section 13 may safeguard a significant constitutional right, the court nevertheless rejected the notion that the importance of a constitutional provision alone requires the recognition of a damages action to redress its violation. *Id.* at 6 (quoting *Katzberg,* 29 Cal.4th at 328, 127 Cal. Rptr.2d 482, 58 P.3d 339).

The Court finds *Wigfall* particularly instructive given its careful analysis of article I, section 13 in accordance with the *Katzberg* framework. Indeed, other district courts have agreed that its reasoning is persuasive and adopted it in concluding that section 13 does not permit damages actions. *See Buzayan v. City of Davis Police Dep't,* CV No. 06–01576, 2007 WL 2288334 MCE, at * 8–9 (E.D.Cal. Aug. 8, 2007) ("This Court agrees with the reasoning of the district court [in *Wigfall*] and finds that there is no remedy of monetary damages under California Constitution article I, § 13."). Finding no evidence of an intent to authorize or deny a damages action, nor any factors strongly favoring the recognition of a constitutional tort, the Court concludes that article I, section 13 does not confer an action for money damages. Thus, Plaintiffs' fourth claim is **DISMISSED** to the extent Plaintiffs seek such relief.

### D. Whether Plaintiffs Have Alleged a Claim Under Civil Code Section 52.1

Plaintiffs' eighth claim alleges violations of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1. (Compl. ¶¶ 174–79.) The Bane Act creates a civil cause of action where a person interferes or attempts to interfere, "by threat, intimidation, or coercion," with the exercise or enjoyment of rights secured by the United States or California Constitutions, or by federal or state law. *See* Cal. Civ. Code § 51.2(a) (setting forth the standard of liability), (b) (authorizing private citizen suits for damages). Defendants seek to dismiss this claim on the basis that Plaintiffs do not allege any threats, intimidation, or coercion independent of the alleged con-

stitutional violations underlying the claim. (Mot. for J. on the Pleadings at 6–10.)

Defendants primarily rely upon two decisions from the California Court of Appeal, *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 137 Cal.Rptr.3d 839 (2012), and *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 183 Cal.Rptr.3d 654 (2015), *as modified on denial of reh'g* Mar. 6, 2015, *review denied* May 20, 2015. Plaintiffs contend these cases are not controlling, arguing that *Shoyoye* is limited in scope and that *Allen* was wrongly decided and is inconsistent with the California Supreme Court's decision in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 11 Cal.Rptr.3d 692, 87 P.3d 1 (2004). Because the impact and scope of these decisions forms the basis for the parties' dispute, the Court begins with an overview of each.

### 1. The California Supreme Court's Decision in *Venegas*

In *Venegas*, the California Supreme Court considered whether section 52.1 requires a showing of a "discriminatory animus," or the intent to threaten or coerce "based on the victim's actual or apparent racial, ethnic, religious, or sexual orientation or other minority status."[11] 32 Cal.4th at 841, 11 Cal.Rptr.3d 692, 87 P.3d 1. The court noted that the language of section 52.1 itself does not restrict the section's benefits "to persons who are actual or perceived members of a protected class." *Id.* at 842–43, 11 Cal.Rptr.3d 692, 87 P.3d 1 (discussing section 52.1 and noting that subdivision (b) permits "[a]ny individual" to sue for civil damages). As the court observed, requiring a discriminatory animus "could have anomalous results, permitting or disallowing recovery based solely on the defendant's perceptions of

the plaintiff's protected status." *Id.* at 843, 11 Cal.Rptr.3d 692, 87 P.3d 1.

The *Venegas* court also considered its previous decision in *Jones v. Kmart Corp.*, 17 Cal.4th 329, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998). Although *Venegas* discussed *Jones* only to address the issue of discriminatory animus and *Jones's* acknowledgment that section 52.1 was adopted in response to a surge of hate crimes, *Venegas's* comments about the decision are instructive here. *Venegas* noted that *Jones* "simply observ[ed] that the language of section 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion." *Id.* (quoting *Jones*, 17 Cal.4th at 338, 70 Cal. Rptr.2d 844, 949 P.2d 941). The court also discounted the county's argument that permitting actions without any showing of discriminatory animus would lead to a deluge of lawsuits, explaining that section 52.1 "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Id.* Ultimately, the court held that a plaintiff need not allege the defendant acted with a discriminatory animus or intent, "so long as those acts were accompanied by the requisite threats, intimidation, or coercion." *Id.*

### 2. The California Court of Appeals' Decisions in *Shoyoye* and *Allen*

The *Shoyoye* court considered the precise issue the parties dispute here—that is, whether a plaintiff must show threats, intimidation, or coercion independent of the constitutional violation where, as in the case of unlawful detention, coercion is inherent in the alleged violation itself. *Shoyoye* recognized that *Venegas* did not

---

11. The Bane Act was enacted in 1987 "as part of a renewed effort to combat the disturbing rise in 'hate crimes,' or, put otherwise, the rising incidence of civil rights violations moti-

vated by hatred and discrimination." *Venegas*, 32 Cal.4th at 845, 11 Cal.Rptr.3d 692, 87 P.3d 1 (Baxter, J., concurring).

address the issue and noted that the question was one of "first impression." *See* 203 Cal.App.4th at 957– 58, 137 Cal.Rptr.3d 839. The court looked to the text of section 52.1, as well as its legislative history, concluding that the section "was intended to address only egregious interferences with constitutional rights," and that "[t]he act of interference with a constitutional right must itself be deliberate or spiteful." *Id.* at 958–59, 137 Cal.Rptr.3d 839. Thus, "where coercion is inherent in the constitutional violation alleged, i.e., an over-detention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met." *Id.* at 959, 137 Cal.Rptr.3d 839. In such cases, "[t]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Id.*

*Allen* involved claims by a class of homeless individuals challenging a city ordinance that prohibited camping on public or private property without a permit. *See* 234 Cal.App.4th at 46, 183 Cal.Rptr.3d 654. The court rejected the Plaintiffs' argument that they had adequately pleaded coercion by alleging police officers "forcibly detained" and arrested them for violating the ordinance. *Id.* at 66–67, 183 Cal.Rptr.3d 654. As the court reasoned, section 52.1 requires a plaintiff to plead and prove "two distinct elements": (1) intentional or attempted interference with a federal or state constitutional or other legal right; and (2) that "the interference or attempted interference was by threats, intimidation or coercion." *Id.* at 67, 183 Cal.Rptr.3d

654. The court distinguished cases predating *Shoyoye* and agreed with *Shoyoye's* conclusion that "a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1." *Id.* at 69, 183 Cal.Rptr.3d 654.

### 3. Plaintiffs' Allegations

■ Plaintiffs' section 52.1 claim is premised upon the basic allegation that Defendants unlawfully detained them by either refusing to release them or denying them bail. (Compl. ¶¶ 174–76.) Their claim thus presents the same type of injury involved in *Shoyoye* and *Allen.* Because the claim is based upon a theory of over-detention—a type of unlawful conduct in which coercion is inherent—Plaintiffs must, pursuant to *Shoyoye* and *Allen,* allege facts demonstrating that Defendants engaged in wrongful conduct or employed threats, intimidation, or coercion independent of the detention.

The Complaint is devoid of any such allegations. Aside from a few conclusory statements,[12] Plaintiffs do not allege any facts suggesting that Defendants engaged in any independent wrongful conduct. For example, Plaintiffs do not allege that Defendants threatened, intimidated, or punished them, or even that Defendants treated them any differently than other inmates.[13] Nor do Plaintiffs allege that Defendants knew the ICE holds were insufficient to authorize their continued detention. As a result, Plaintiffs' section 52.1 claim fails as a matter of law. *See Allen,* 234 Cal.App.4th at 69, 183 Cal. Rptr.3d 654 ("Similar to *Shoyoye,* this

12. (*See, e.g.,* Compl. ¶¶ 174–76 ("Such unlawful detention was accomplished through coercion, i.e., the forced continuing incarceration in LASD custody."); *see also* Compl. ¶ 178 ("The acts of coercion alleged herein were separate from the unlawful acts of denying Plaintiffs ... the right to post bail and of treating the immigration detainer as a mandate or authorization to hold Plaintiffs.").)

13. Plaintiffs argue that they have pleaded independent coercion by alleging Defendants continued to detain them or denied them bail for no reason other than the existence of an ICE hold. (Opp'n at 18– 20.) But these facts are the predicates giving rise to the alleged constitutional violations. As these facts form the basis for the allegedly unlawful detentions, they do not demonstrate coercion independent of the violations themselves.

case involves an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest..... The conclusory allegations of 'forcible' and 'coercive' interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a violation of section 52.1."); *Shoyoye*, 203 Cal.App.4th at 961–62, 137 Cal.Rptr.3d 839 (finding the plaintiff did not, as a matter of law, establish a section 52.1 violation where no evidence showed coercion "independent of that inherent in a wrongful detention").

Plaintiffs attempt to avoid this result by arguing that *Shoyoye* is limited to cases involving merely negligent conduct, and that *Allen's* interpretation of the decision is overbroad. The Court is mindful that in *Shoyoye*, the over-detention resulted from negligent rather than intentional conduct. But the difference is one without meaning where, as here, Plaintiffs have not alleged any facts suggesting that Defendants intentionally detained them by use of threats, intimidation, or coercion.

Like this case, *Shoyoye* involved an alleged over-detention in a county jail facility. The *Shoyoye* court found that the plaintiff had failed to demonstrate independent coercion, as the evidence showed only that jail employees acted negligently in assigning a parole hold to the plaintiff and in failing to detect the error during quality control procedures. 203 Cal. App.4th at 961, 137 Cal.Rptr.3d 839. No evidence suggested that the employees knew the plaintiff should have been released, or that any employees purposefully threatened, punished, or intimidated him. *Id.* "Any intimidation or coercion that occurred was simply that which is reasonable and incident to maintaining a jail." *Id.* With no evidence of coercion independent of that inherent in a wrongful detention, the plaintiff could not establish a violation of section 52.1. *Id.* at 961–62, 137 Cal.Rptr.3d 839.

*Shoyoye* contrasted its facts with those in *Venegas*. *Venegas* arose from a vehicle stop and involved an arguably involuntary search of the plaintiffs' home and a subsequent arrest and detention based on law enforcement's erroneous conclusion that the stopped vehicle was stolen. The *Shoyoye* court distinguished *Venegas* on the ground that the plaintiffs there offered evidence suggesting the probable cause initially justifying the stop eroded over time, "such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights." *Id.* at 961, 137 Cal.Rptr.3d 839.

This case is similar to *Shoyoye*. The gist of Plaintiffs' section 52.1 claim is that Defendants unlawfully detained them by honoring ICE holds even though state law permitted their release. Critically, Plaintiffs do not allege any facts to suggest that Defendants knew or should be presumed to know these holds were legally insufficient to justify Plaintiffs' continued detention. Plaintiffs' claim is therefore distinguishable from *Venegas*, as the police officers there could have been found to have known they lacked probable cause. Like the plaintiff in *Shoyoye*, whose over-detention resulted from an inaccurately assigned parole hold and law enforcement's failure to recognize the mistake, Plaintiffs' over-detentions similarly resulted from immigration holds and Defendants' failure to appreciate their alleged inadequacy. Because Plaintiffs have not alleged any facts suggesting coercion "independent of that inherent in [their] wrongful detention," Plaintiffs have failed to state a claim under section 52.1. *See id.* at 961–62, 137 Cal.Rptr.3d 839.

In sum, the Court finds *Shoyoye* and *Allen* controlling and rejects Plaintiffs' assertion that *Venegas* requires a different result. *Venegas* did not address the issue presented here and expressly considered

by both *Shoyoye* and *Allen*—whether a section 52.1 plaintiff must allege facts independent of an unlawful detention when the detention forms the basis for the claim. Moreover, *Venegas's* language is consistent with *Shoyoye* and *Allen's* conclusion that, where coercion is inherent in the alleged rights violation, a plaintiff must plead some wrongful conduct separate and apart from the violation. *See* 32 Cal.4th at 843, 11 Cal.Rptr.3d 692, 87 P.3d 1 ("[S]ection 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion .... [S]ection 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right.) (emphasis added). Thus, because Plaintiffs have failed to allege any independent wrongful conduct by Defendants, Plaintiffs' eighth claim is **DISMISSED.**

### E. Whether Plaintiffs' Claims Against the Sheriff Should Be Dismissed

Finally, Defendants argue that Plaintiffs' claims against the Sheriff are in his official capacity only, are duplicative of those against the County, and should therefore be dismissed. (Mot. for J. on the Pleadings at 10–12.) Plaintiffs do not dispute that the Sheriff is named as a defendant in his official capacity only. (*See* Opp'n at 2 n.1 (noting that all claims against the Sheriff are official capacity claims such that Federal Rule of Civil Procedure 25(d) requires Sheriff McDonnell's replacement of Sheriff Baca).) Plaintiffs nevertheless contend dismissal is inappropriate here. (Opp'n at 27–30.)

"An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir.2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Id.* The cases discussing dismissal of redundant defendants use permissive, not mandatory, language, suggesting that dismissal of official capacity suits is not required. *See, e.g., id.*; *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1206 (E.D.Cal.2008) (citing *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D.Cal.1997) ("For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.").

In *Center for Bio–Ethical Reform*, the Ninth Circuit recognized that a claim against Sheriff Baca in his official capacity is equivalent to a suit against the Sheriff's Department. *See* 533 F.3d at 799. The same reasoning and result would apply with respect to Sheriff McDonnell. As Plaintiffs point out, however, the Complaint names only the County and the Sheriff as defendants, and the County and Sheriff's Department are separate and distinct municipal entities. Defendants have not offered any explanation for why claims against the Sheriff should be considered equivalent to claims against the County.[14]

---

14. Defendants only argue that the Sheriff should be dismissed because they do not intend to either pursue an Eleventh Amendment defense at trial or argue that the Sheriff acts on behalf of the State of California rather than the County. (*See* Reply at 16–17.) But

Defendants affirmatively allege these defenses in their Answer. (*See* Answer ¶¶ 42, 43.) Given that the pleadings would permit Defendants to assert these defenses, it would be improper to dismiss Plaintiffs' claims against

Accordingly, the Court declines to dismiss the Sheriff at this time.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**. Plaintiffs' third and fourth claims for violations of article I, sections 7 and 13 of the California Constitution are **DISMISSED** to the extent Plaintiffs seek monetary relief. Plaintiffs' eighth claim for violations of the Bane Act under section 52.1 is also **DISMISSED**. The hearing set for this matter on July 13, 2015, at 1:30 p.m., is hereby **VACATED**.

**IT IS SO ORDERED.**

the Sheriff based solely on Defendants' repre-

sentation that they do not intend to do so.